In re AIR FLORIDA, INC., Debtor.

F/S AIRLEASE II, INC., Plaintiff,

v.

AIR FLORIDA, INC., Greycas, Inc., and Aerothrust Corporation, Defendants.

Bankruptcy No. 84–01224–BKC–SMW.
Adv. No. 84–0515.

United States Bankruptcy Court,
S.D. Florida.

Nov. 30, 1984.

Pension Benefit Guaranty Corp., Angela J. Arnett, Washington, D.C., for PBGC.

A. Rodger Traynor, Jr., Miami, Fla., for TRT Tel. Corp.

Weil, Gotshal & Manges, P.A., New York City, for N.Y., Airlines, Inc.

Jeffrey H. Beck, Fort Lauderdale, Fla., for Landmark Union Trust Bank.

William R.H. Broome, West Palm Beach, Fla., for American Heart Assoc.

Oster, Suchman & Hankin, P.A. by T. Galfin, Santa Ana, Cal., for Air Cal.

Herman W. Goldner, St. Petersburg, Fla., for All Advert. Assoc.

Lewis R. Cohen, Miami, Fla., for Sally Leasing Co.

Brian S. Dervishi, Miami, Fla., for Aeroports De Paris.

Robert A. Mark, Miami, Fla., for Midway Airlines, Inc.

Anthony F. Walsh, Philadelphia, Pa., for Heleasco Fifteen, Inc.

Alan K. Marcus, Miami, Fla., for Aircontact, Inc.

James H. Rollins, Atlanta, Ga., for Air Atlanta.

Thomas C. Nord, San Francisco, Cal., for GLC Finance Corp.

Solomon B. Zoberman, Fort Lauderdale, Fla., for British Island Airways Ltd.

Seymour J. Ugelow, New York City, for U.S. Aviation Underwriters.

I. Douglas Dunipace, Scottsdale, Ariz., for Collins.

Phillips & Phillips, P.A., Miami, Fla., for Aeronautical Radio, Inc.

Mitchell, Harris, Canning, Murray & Usich, Miami, Fla., for Mobil Oil Corp.

Thomas D. Koch, Dunedin, Fla., for Arke Reizen B.V.

Kilpaatrick & Cody, Washington, D.C., Jack & Anna Tommer, Miller, Nash Wiener, Hager & Carlsen, Portland, Or., for D.I.P.

Jan Douglas Atlas, Fort Lauderdale, Fla., for Trelawny Beach Hotel, Inc.

Harold Weisblatt, New York City, for Chemical Bank.

Howard L. Feinsand, New York City, for 1980 Aircraft Investors.

Paul M. Rashkind, Miami, Fla., for Transamerica Airlines, Inc.

Michael E. Nannes, Washington, D.C., for American Security Bank.

Robert F. O'Malley, Jr., Miami, Fla., for American Express Travel Related.

Hahn & Hessen, P.A., New York City, for American Express.

Sanford L. Bohrer, Miami, Fla., for AT&T Inf., Systems, Inc.

Irving M. Wolff, Miami, Fla., for Gen. Elec. Co.

Manners, Tucker, Carrillo & Damoorg, Miami, Fla., for AFIFAA.

Morgan, Lewis & Bockius, Miami, Fla., for Haven Leasing Corp.

William Knight Zewadski, Tampa, Fla., for GPA Corp.

Michael A. Berman, Washington, D.C., and Mark E. Budnitz, Atlanta, Ga., for SEC.

Robert A. Rosenblatt, Miami, Fla., for Connie Ballinger.

William F. Leonard, Fort Lauderdale, Fla., W. Paul Zampol, Atlanta, Ga., for Delta Air Lines, Inc.

Pedro F. Martell, Coral Gables, Fla., for Viajes Ecuador U.S.A., Inc.

Richard E. Berman, Fort Lauderdale, Fla., for City Nat. Bank of Fla.

Ellis S. Rubin, Miami, Fla., for Nicole M. Moquin, et al.

J. Christopher Kohn, U.S. Dept. of Justice, Washington, D.C., for the United States.

Jerry M. Markowitz, Miami, Fla., Antonow & Fink, P.A., Chicago, Ill., for The Christiana Co., Inc.

Leon C. Marcus, New York City, for Air Fl. Independent Flight.

Marc A. Levinson, Los Angeles, Cal., Joseph F. Healy, Jr., Winston-Salem, N.C., for Piedmont.

Charles J. Jannace, III, New York City, for Maurice Jacques Ltd.

Edwards & Angell, Palm Beach, Fla., for Northeastern Intern. Airways.

Corad W. Sanders, Phoenix, Ariz., for Garrett Corp.

Paul, Landy, Beiley, Harper & Metsch, Miami, Fla., Lawrence Flaster, Fort Lauderdale, Fla., Debra E. Cohen, Miami, Fla., for several creds.

Robert A. Greenspon, Stamford, Conn., Brian Mcloghlin, Stamford, Conn., William Knight Zewadski, Tampa, Fla., for GPA Leasing Corp.

Frank M. Buscaglia, New York City, for Trans World Airlines.

Jay Solowsky, Miami, Fla., for The Prudential Ins. Co.

Lawrence M. Schantz, Miami, Fla., for Interfirst Bank of Dallas.

George H. Tucker, Washington, D.C., Dorian K. Damoorgian, Miami, Fla., for District 146 Intern. Ass'n of Machinists & Aero.

Gregory A. Martin, Miami, Fla., for AFCO Credit Corp.

Robert E. Venney, Miami, Fla., for McDonnell Douglas Corp.

Louis T. Urbanczyk, Washington, D.C., for Dan-Air Services Ltd.

Martin Sandler, Miami, Fla., for Rich Intern. Airways, Inc.

Patterson, Belknap, Webb & Tyler, New York City, for Dow Jones & Co., Inc.

Lewis N. Brown, Miami, Fla., for Executive Nat. Bank.

Patrick S. Scott, Francis L. Carter, Miami, Fla., Michael L. Cook, New York City, for World Airways, Inc.

Don A. Lynn, Miami, Fla., for Southern Bell Tel. & Tel.

Luis M. Artime, Miami, Fla., for Sun Bank of Miami.

Rex B. Guthrie, Miami, Fla., for Aero-Thrust Corp.

Andrew Psalidas, Miami, Fla., Asst. Co. Atty.

Stanton R. Orr, Miami, Fla., for Teamsters Union.

David J. Gzesh, Washington, D.C., for Internat'l Broth. of Teamsters.

John W. Kozyak, Miami, Fla., for Societe Internat'l De Tel.

J. Christopher Kohn, Miami, Fla., for U.S.A., F.A.A.

Jon W. Zeder, Miami, Fla., for The Boeing Co.

Neal D. Colton, Philadelphia, Pa., for Air Canada.

Robert T. Youngs, Coral Gables, Fla., for Coral Gables Fed. Sav.

Michael A. Snyder, Pittsburgh, Pa., for F/S Airlease II, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER

SIDNEY M. WEAVER, Bankruptcy Judge.

This is a proceeding in which F/S Airlease II, Inc. ("FSA") seeks to recover possession of an aircraft (including engines) described herein as a lessor exercising its rights under Section 1110 of the Bankruptcy Code, 11 U.S.C. § 1110. Greycas, Inc. ("Greycas"), to the extent described herein, and Swig Investment Company Trust No. 1 ("Swig") have joined in and support FSA's request for possession of the Aircraft.

On September 28, 1984 at the conclusion of the hearing held by the Court on this matter and after having heard arguments of counsel and receiving evidence, the Court orally entered its order awarding

joint possession to FSA and Greycas of a Boeing 737–200 airframe, two Pratt & Whitney jet engines, two quick engine change units and miscellaneous parts and records, all as more fully described herein and in the Court's written order of even date which is effective as of September 28, 1984 (the "Order"). Set forth below are the Court's findings of fact and conclusions of law in support of the Order.

## I. *Findings of Fact*

### A. *Parties*

1. Plaintiff, FSA, is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. It is a debtor in a Chapter 11 case in the United States Bankruptcy Court for the Western District of Pennsylvania, which commenced on August 3, 1984. FSA's interests in the said aircraft are its primary asset.

2. Air Florida is a Florida corporation with its headquarters in Miami, Florida, engaged in the business of an air carrier and has operated under a certificate of convenience and necessity issued by the Civil Aeronautics Board. On July 3, 1984 Air Florida filed a petition for relief under the provisions of Chapter 11 of Title 11 of the United States Code.

3. AeroThrust Corporation ("Aero-Thrust") is a corporation with a place of business in Miami, Florida. It is engaged in the business of, among other things, repairing jet engines.

4. Greycas, is an Arizona corporation engaged in the financing of aircraft, among other things.

### B. *Ownership of and Other Interests in the Aircraft*

5. Pursuant to a Lease Agreement (the "Master Lease") dated as of May 1, 1980 and a Lease Supplement No. 1 dated July 14, 1980, each between FSA and Air Florida, Inc. ("Air Florida") (the Master Lease and the Lease Supplement No. 1 are hereinafter called the "User Lease"), FSA leased to Air Florida a Boeing aircraft (the "Aircraft") which at the time 'of delivery by FSA to Air Florida on July 14, 1980 consist-

ed of a Boeing model 737–200 airframe (manufacturer's serial number 19552) (the "Airframe"), with two installed Pratt & Whitney JT8D–7 jet engines (respective manufacturer's serial numbers 655929 ("Engine 929") and 655880 ("Engine 880"). The User Lease was for a period of ten years commencing on July 14, 1980.

6. At the time of delivery by FSA to Air Florida, the Airframe included two quick engine change units ("QEC's") manufactured by Boeing by virtue of which Engines 929 and 880 were installed on the Airframe and which are necessary for any engine to be installed on the Airframe.

7. The Aircraft was fully operational and airworthy at the time of delivery by FSA to Air Florida.

8. FSA had acquired the Aircraft from United Airlines and had borrowed funds from Greycas in order to make the purchase. In that connection, FSA and Greycas entered into a Loan and Security Agreement, an Aircraft Mortgage and Security Agreement, and a Consent and Notice of Assignment, each dated July 14, 1980, and a First Amendment to Loan and Security Agreement and a First Amendment to Aircraft Mortgage and Security Agreement, each dated as of July 30, 1980 (collectively, the "Greycas Documents").

9. Pursuant to the Greycas Documents, FSA granted to Greycas a lien on the Aircraft and FSA assigned its rights under the User Lease to Greycas. Whether the assignment of FSA's rights under the User Lease was absolute or merely intended as security is the subject of a dispute in FSA's own Chapter 11 case and need not and is not intended to be addressed in any way by this Court. FSA and Greycas have agreed that this issue will not be pressed by them in this Court and that to the extent they prevail against Air Florida in this proceeding, they will take joint possession of the Aircraft subject to the jurisdiction of the United States Bankruptcy Court for the Western District of Pennsylvania.

10. On August 29, 1980, pursuant to a Purchase Agreement of that date between

FSA and Comet Leasing Corp., FSA sold the Aircraft (and delivered a Bill of Sale covering the Aircraft dated the same date) to Comet Leasing Corp., subject to the User Lease and the rights of Greycas under the Greycas Documents.

11. On August 29, 1980, following the aforesaid sale from FSA to Comet Leasing Corp., pursuant to a Purchase Agreement of that date between Comet Leasing Corp. and Benjamin H. Swig and Melvin M. Swig as Trustees of Swig, Comet Leasing Corp. sold the Aircraft (and delivered a Bill of Sale covering the Aircraft dated the same date) to Swig subject to the User Lease, the rights of Greycas under the Greycas Documents and to a purchase money security interest (the "Comet Lien") in favor of Comet Leasing Corp. to secure the deferred purchase price owed by Swig to Comet Leasing Corp., as more fully described in the Security Agreement dated August 29, 1980 between Swig and Comet Leasing Corp. and the related Note of the same date from Swig to Comet Leasing Corp.

12. On August 29, 1980, after Swig obtained title to the Aircraft, Swig and FSA entered into an Agreement of Lease dated that date (the "Wrap Lease") pursuant to which Swig leased the Aircraft to FSA for a period of 18 years commencing immediately, subject to the User Lease, the rights of Greycas under the Greycas Documents, the Comet Lien and the rights of Swig under the Wrap Lease. On the same date, Swig and FSA executed a Collateral Assignment of Leases pursuant to which FSA assigned to Swig to secure payment of the rents due from it to Swig under the Wrap Lease, all of its rights as Lessor under the User Lease (subject to the rights of Greycas under the Greycas Documents) and in any subsequent extensions or renewals thereof and in all other future leases of the Aircraft to users thereof.

13. The User Lease, the Greycas Documents, the Wrap Lease and the Security Agreement creating the Comet Lien were all duly recorded with the FAA in 1980 and are valid and binding.

14. In summary, since August 29, 1980: (i) Swig has owned the Aircraft subject to the rights of FSA and Air Florida under the User Lease and of Greycas under the Greycas Documents and to the Comet Lien; (ii) FSA has had rights in the Aircraft as Lessor under the User Lease since July 14, 1980 and will continue to have such rights for as long as the User Lease is not terminated, subject only to the rights of Greycas under the Greycas Documents. In addition, FSA has had rights in the Aircraft as lessee under the Wrap Lease, subject to its rights and the rights of Air Florida under the User Lease, of Greycas under the Greycas Documents, to the Comet Lien and to Swig's rights as lessor under the Wrap Lease.

## C. *Background of Engines Installed in the Number One Slot on the Airframe*

15. Engine 929 was installed in the number one slot on the Airframe when the Aircraft was delivered to Air Florida on July 14, 1980. It remained in that position until November 19, 1980, when Air Florida removed it for repairs.

16. On November 21, 1982, a Pratt & Whitney JT8D–7 (serial number 656093, "Engine 093") was placed in the number one slot to replace an engine removed by Air Florida on that day that had been installed on July 20, 1982. On July 20, 1982 another engine had been removed by Air Florida that had been installed by Air Florida on November 19, 1980 when Engine 929 was removed.

17. Engine 093 to date has remained continuously on the Airframe. Documents recorded with the Federal Aviation Administration ("FAA") show that Heleasco Fifteen, Inc. ("Heleasco") leased Engine 093 to Air Florida on April 21, 1980 in a transaction in which two aircraft (the "Heleasco Aircraft") including four engines (one being Engine 093) were leased to Air Florida. Also recorded with the FAA are documents showing a lien on Engine 093 in favor of Lockheed Finance Corporation.

18. On May 16, 1982, Air Florida (with the consent of Heleasco) subleased to Pan American Airlines the two Heleasco Aircraft which at the time of delivery to Pan American had installed on them three of the four original engines leased to Air Florida by Heleasco. Engine 093 had been removed by Air Florida which substituted in its place an engine (serial number 657653, the "093 Replacement Engine") in which Air Florida originally acquired an interest under lease from Air Canada.

19. On July 29, 1982, Engine 929 was installed on an aircraft (the "Weiler Aircraft") leased to Air Florida by F/S Airlease III Corporation ("Airlease III") and owned by the Weiler-Arnow Investment Company Aircraft Trust #1 (the "Weiler Trust"). The Weiler Trust and Airlease III respectively occupy similar status in relation to the Weiler Aircraft as do Swig and FSA with respect to the Aircraft by virtue of a series of transactions similar to those entered into by Swig, FSA, Comet Leasing Corp., Greycas and Air Florida relating to the Aircraft and described above.

20. Engine 929 was destroyed on January 13, 1982 when the Weiler Aircraft crashed into the Potomac River.

21. Pursuant to an insurance policy claim duly filed by Air Florida with respect to the crash of the Weiler Aircraft, the full policy limits covering one airframe and two engines were paid out by the insurer to the three named insureds as follows: Air Florida ($4,905,215 plus interest), Airlease III ($589,755.98), and Greycas ($6,529,334). Greycas had financed Airlease III's purchase of the Weiler Aircraft and the insurance money received by it paid off Airlease III's outstanding purchase money debt to Greycas. Weiler was not a named insured although the terms of the wrap lease from Weiler to Airlease III (which was similar to the Wrap Lease) provided that Weiler was to be a named insured and the rights to the insurance proceeds received by Airlease III are the subject of litigation between it and Weiler.

22. None among Airlease III, Weiler, FSA and Swig discovered until after Air Florida's Chapter 11 case commenced that Engine 929 was on the Weiler Aircraft when it crashed.

23. Neither FSA nor Swig received from Air Florida in respect of Engine 929 any of the aforesaid insurance proceeds received by Air Florida.

### D. *Background of Engines Installed in the Number Two Slot on the Airframe*

24. On November 7, 1980, Air Florida installed Engine 880 (which came into its possession under the User Lease in the number two slot on the Aircraft on July 14, 1980) on aircraft N64AF which was on lease to Air Florida from a third party. On April 25, 1982 Engine 880 was removed by Air Florida from N64AF. On July 16, 1982 Air Florida leased Engine 880 to People Express for a term through and including August 12, 1982. On November 12, 1982 Engine 880 was leased by Air Florida to AeroThrust. AeroThrust thereafter subleased it to another party that returned it to AeroThrust in damaged condition on June 27, 1983. Since that time, Engine 880 has remained in AeroThrust's possession and no repairs have been made to it.

25. On or about January 10, 1983 the QEC accompanying Engine 880 (the "880 QEC") when it was leased by Air Florida to AeroThrust in November, 1982 was used by AeroThrust to install in the number two position on the Aircraft a Pratt & Whitney JT8D–7 engine (serial number 656810, "Engine 810"). Engine 810 thereafter remained in the number two position on the Aircraft where it remained until approximately June 27, 1984 (just a week before the commencement of Air Florida's Chapter 11 case) when it suffered loss of power and, together with the 880 QEC, was delivered for repair to AeroThrust with a hole in the cowling.

26. No engine has been in the number two position on the Aircraft since Engine 810 was removed on June 27, 1984.

CONCLUSIONS OF LAW

27. Air Florida has conceded that it must return to FSA the Airframe, Engine 880 and the 880 QEC and this Court agrees. With respect to Engine 093, Air Florida asserts that (i) it is not a replacement engine subject to the User Lease because it never delivered to Swig a formal written bill of sale purporting to convey title (and by implication, that such a bill of sale was required to effect a valid transfer of title), and (ii) that even if title were transferred without a bill of sale, Air Florida as a Debtor-in-Possession exercising the avoiding powers of a state law attachment creditor under § 544(a)(2) can avoid Swig's ownership on the theory that Swig did not record its ownership of Engine 093 with the FAA and that as a result, in a contest between Swig and a state law attachment creditor that levies on Engine 093 and Swig, the attaching creditor's claim to title would have priority over Swig's claim of title.

E. *Transfer of Ownership of Engine 093*

28. Pursuant to Section 11.02 of the Master Lease, Air Florida was required to promptly notify FSA in writing that Engine 929 had been destroyed and to "replace such Engine as soon as reasonably possible" by duly conveying to the owner of the destroyed engine (Swig) title to a replacement engine free and clear of all liens.

29. Under Section 12.03 of the Master Lease, provided that no Event of Default (as defined in the Master Lease) existed at the time (the existence of which we need not address here), Air Florida would have been entitled to retain the insurance proceeds it received with respect to Engine 929, but even then only if it "shall have fully performed the terms of Section 11.-02," and in particular, conveyed a replacement engine to Swig.

30. Section 19.01 of the Master Lease provides in pertinent part: "This Lease shall in all respects be governed by, and construed in accordance with, the laws of the State of Pennsylvania, including all matters of construction, validity and performance." Therefore Pennsylvania law, and in particular Section 2–401 of the Uniform Commercial Code as adopted in Pennsylvania, 13 P.C.S.A. § 2401, governs. That Section provides that the intent of the parties determines when title to sold goods passes from seller to buyer. Air Florida's duty to convey title to a replacement engine for Engine 929 is a duty to sell goods to Swig in exchange for valuable consideration (the insurance proceeds received by Air Florida and the other rights generally of Air Florida under the User Lease).

31. The Court holds that Sections 11.02 and 12.03(B) of the Master Lease clearly evidence the general intent of the parties that Air Florida must convey title to a replacement engine as quickly as possible when a leased engine is destroyed and that *if* Air Florida promptly notifies FSA that an engine is destroyed, such transfer of title would be accomplished by delivering a bill of sale. However, it does not address the question of intent if notice is not promptly given. Given Air Florida's egregious breach of the prompt notice requirement (*no* notice was given), its retention of the insurance proceeds (which it had no right to retain unless it transferred title to a replacement engine) and its conduct in dedicating Engine 093 to the number one position on the Airframe since November 21, 1982 (almost two years prior to Air Florida's bankruptcy), this Court holds that all of Air Florida's right, title and interest in and to Engine 093 was effectively transferred by Air Florida to Swig prior to the commencement on July 3, 1984 of Air Florida's Chapter 11 case and that in any event Air Florida is estopped by its conduct from asserting that title was not so transferred.

32. The Court holds further that, in light of the requirement under Section 1.02 of the Master Lease that title to a replacement engine be transferred free and clear of all liens and encumbrances and in light of the fact that Lockheed Finance Corporation ("Lockheed") is a record lienholder and Heleasco is a record lessor with respect to Engine 093, Air Florida accomplished (and

is estopped from denying that it did so) this requirement as nearly as possible under the circumstances by transferring to Swig for Swig's sole benefit all of Air Florida's rights to deal with Heleasco and Lockheed to obtain releases of their record interests in Engine 093 including without limitation all Air Florida's rights, title and interest in and to the 093 Replacement Engine and any rights Air Florida may have to require return to it of the 093 Replacement Engine if Heleasco and Lockheed refuse to release their record interests in Engine 093. All of the aforesaid rights described in this and the preceding paragraph transferred by Air Florida constitute part of Air Florida's prior right, title and interest in and to (or proceeds thereof) Engine 093 and are herein called the "093 Rights." Air Florida shall also cooperate with Swig in its dealings with Lockheed and Heleasco with respect to Engine 093 and the 093 Replacement Engine and shall execute such documents and instruments as are necessary or appropriate to enable Swig to conclude such dealings.

### F. Inapplicability of Section 544 Avoiding Powers

33. Assuming, *arguendo*, that the User Lease as recorded did not satisfy the recording requirements of 49 U.S.C. § 1403(a)(2), the Court holds that there is no recording requirement under said Section 1403 with respect to the *ownership* of aircraft engines. Section 1403(a)(2) requires only the recording of "Any lease and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes ..." that affects title to or any interest in any specifically identified aircraft engine. The FAA does not record ownership of engines precisely because there is no duty to record such ownership under Section 1403(a)(2). Thus, even if the Debtor-in-Possession standing in the shoes of a hypothetical state law attachment creditor under 11 U.S.C. § 544(a)(2), could terminate FSA's rights as lessor under the User Lease for failure to have made a proper recording with respect to its interest as lessor of

Engine 093, it could not vitiate Swig's valid ownership thereof because Swig had no duty to record its ownership interest. A state law attachment creditor cannot acquire by levy any greater rights in the levied property than its debtor had. Under applicable Florida law, Florida Statute § 76.21 provides:

"if any attachment shall be levied upon property claimed by any person other than the defendant in attachment, such person may, at his option, replevy the same or interpose a claim in the manner provided in the case of execution."

In this case Swig acquired ownership of the 093 Rights prior to the commencement of Air Florida's bankruptcy case and thus at the time of the hypothetical levy on Engine 093 by a state attachment creditor, Air Florida had no ownership rights in Engine 093 and Swig could replevy it from the attaching creditor.

34. In summary, Swig owns the 093 Rights and the right to possess and use Engine 093 (or the 093 Replacement Engine) have been given by Swig to FSA under the Wrap Lease.

### G. Exercise of Section 105 Equity Powers

35. In the alternative, even if Swig had not obtained title to the 093 Rights, or even if the Debtor-in-Possession could have avoided Swig's ownership by using the Section 544 avoiding powers, this Court would nevertheless exercise its equity power under Section 105 of the Bankruptcy Code to impose a constructive trust in favor of Swig with respect to the 093 Rights in light of Air Florida's egregious breaches of its obligations under the User Lease, its retention of the insurance proceeds received by it with respect to Engine 929 and in light of the fact that Engine 093 is not a part of and not necessary for carrying out Air Florida's plan of reorganization involving Midway Airlines.

36. FSA and Swig have urged the Court to grant them possession of Engine 810 on the theory that Air Florida "dedicated" it

to the number two position on the Airframe for more than 1½ years and that it ought to be deemed to have transferred title to it to Swig. However, the Court holds that when Engine 880 was damaged, it did not suffer an "Event of Loss" as defined in Section 1.12 of the Master Lease and as used in Section 11.02 thereof, and therefore Section 11.02 with respect to replacing engines did not apply. Under Section 6.05 of the Master Lease, Air Florida merely had a duty to repair Engine 880 which it did not do. Swig's remedy is to take possession of Engine 880 and to file a proof of claim against Air Florida for damages for its breach of the covenant to repair.

37. A separate Order will be entered consistent with the foregoing Findings of Fact and Conclusions of Law.

### ORDER OF COURT

AND NOW, to wit, this 30 day of November, 1984, as of September 28, 1984, and after notice and hearing, and in consideration of the foregoing Findings of Fact and Conclusions of Law it is hereby

ORDERED, ADJUDGED AND DECREED that:

1. The automatic stay be and hereby is terminated as it affects the interests of F/S Airlease II, Inc. ("FSA"), Greycas, Inc. ("Greycas") and Swig Investment Company Trust No. 1 ("Swig") in the Boeing 737–200 airframe, manufacturer's Serial No. 19552, U.S. Registration N61AF; Pratt & Whitney JT8D–7 jet engine, Serial No. 656093 and related Quick Engine Change Kit; Pratt & Whitney JT8D–7 jet engine, Serial No. 655880 and related Quick Engine Change Kit; all miscellaneous parts; and records (including, without limitation, aircraft flight manuals, aircraft maintenance manuals, Kardex records, component listing records, air frame history records, historical records for the Engine No. 655880 and No. 656093, airworthiness status, service bulletin status, life limited status and previous shop visits, FAA Form 337) relating to any of the foregoing (collectively, the "Airplane").

2. The right to possession of the Airplane is granted to FSA and Greycas, jointly; and

3. The Debtor shall cooperate fully in respect to the "093 Rights" (as that term is defined in Paragraphs 31 and 32 of the Court's Findings of Fact and Conclusions of Law) including, without limitation, the duty of the Debtor to cooperate with Swig and FSA in their dealings with Lockheed Finance Corporation and Heleasco Fifteen, Inc. and to execute such documents and instruments as are necessary or appropriate to enable Swig and FSA to conclude such dealings.